**IN THE UNITED STATES DISTRICT COURT**
**DISTRICT OF UTAH, CENTRAL DIVISION**

| | |
|---|---|
| GAIL W.-S. and C. L.,<br><br>Plaintiffs,<br><br>vs.<br><br>UNITED HEALTHCARE INSURANCE COMPANY,<br><br>Defendant. | **MEMORDANDUM DECISION AND ORDER**<br><br>Case No. 2:19-cv-00810<br><br>District Judge Robert J. Shelby |

This case arises out of Defendant United Healthcare Insurance Company's alleged improper denial of coverage for residential mental health treatment.[1] Before the court is Plaintiffs Gail W.-S. and C.L.'s Motion for an Award of Attorneys' Fees and Costs and an Award of Prejudgment Interest.[2] For the reasons explained below, the court GRANTS IN PART the Motion.[3]

## BACKGROUND

Plaintiffs initiated this action on October 23, 2019, asserting claims for recovery of benefits under the Employee Retirement Income Security Act of 1974 (ERISA) and violation of the Mental Health Parity and Addiction Equity Act of 2008 (MHPAEA).[4] The parties filed cross-motions for summary judgment,[5] and both motions were granted in part and denied in

---

[1] *See* Dkt. 2, *Complaint*.

[2] Dkt. 99, *Motion for an Award of Attorneys' Fees and Costs and an Award of Prejudgment Interest* (*Motion*).

[3] Pursuant to DUCivR 7-1(g), the court determines oral argument is unnecessary and will decide the Motion based upon the parties' written memoranda.

[4] *Complaint* ¶¶ 32–50.

[5] Dkt. 52, *Plaintiffs' Motion for Summary Judgment*; Dkt. 55, *Defendant's Motion for Summary Judgment*.

part.[6] Specifically, the court reversed United's denial of benefits, concluding it acted arbitrarily and capriciously in denying Plaintiffs' claim by "failing to engage with the information Plaintiffs submitted in support of their claims and failing to adequately explain the rationale for its denials."[7] The court did not reach the MHPAEA claim and remanded the benefits claim for United's reconsideration.[8] The court entered judgment in favor of Plaintiffs and retained jurisdiction to consider requests for attorneys' fees, costs, and prejudgment interest following United's reconsideration of Plaintiffs' benefit claim on remand.[9] United subsequently reversed its denial of Plaintiffs' claim for C.L.'s residential mental health treatment between July 25, 2016, and April 2, 2017, and issued payment for $102,763.41.[10]

On November 10, 2025, Plaintiffs moved for an award of reasonable attorneys' fees, costs, and prejudgment interest at 10% simple interest per annum.[11] United opposes the Motion, arguing Plaintiffs are not entitled to attorneys' fees or, in the alternative, the fees should be reduced.[12] United also argues any prejudgment interest should be calculated at the prime rate banks charge.[13] The Motion is fully briefed.[14]

[6] Dkt. 97, *Memorandum Decision and Order* (*Order*).

[7] *Id.* at 58.

[8] *Id.* at 58–59, 61.

[9] *Id.*; Dkt. 98, *Judgment in a Civil Case*.

[10] Dkt. 99-2, *Proof of Payment*.

[11] *Motion* at 1.

[12] Dkt. 104, *Defendant United Healthcare Insurance Company's Brief in Opposition to Plaintiffs' Motion for an Award of Attorneys' Fees and Costs and an Award of Prejudgment Interest* (*Opposition*) at 6.

[13] *Id.*

[14] *Motion*; *Opposition*; Dkt. 107, *Reply in Support of Motion for Attorneys' Fees and Costs* (*Reply*).

## LEGAL STANDARDS

The court may award "reasonable attorney's fees and costs" to either party in an ERISA action.[15] The party claiming fees has the burden of proving the proposed fee is appropriate.[16] "A fee claimant need not be a prevailing party" but must have "achieved 'some degree of success on the merits.'"[17] The Tenth Circuit has identified five factors courts may consider in determining whether to award attorneys' fees and costs:

> (1) the degree of the opposing parties' culpability or bad faith; (2) the ability of the opposing parties to personally satisfy an award of attorney's fees; (3) whether an award of attorney's fees against the opposing parties would deter others from acting under similar circumstances; (4) whether the parties requesting fees sought to benefit all participants and beneficiaries of an ERISA plan or to resolve a significant legal question regarding ERISA; and (5) the relative merits of the parties' positions.[18]

"No single factor is dispositive and a court need not consider every factor in every case."[19]

An award of prejudgment interest is proper in an ERISA case when the "award serves to compensate the injured party and . . . is otherwise equitable."[20] Determining the prejudgment interest rate is "within the sound discretion of the district court."[21]

---

[15] 29 U.S.C. § 1132(g)(1).

[16] *See Case v. Unified Sch. Dist. No. 333*, 157 F.3d 1243, 1250 (10th Cir. 1998).

[17] *Cardoza v. United of Omaha Life Ins. Co.*, 708 F.3d 1196, 1207 (10th Cir. 2013) (quoting *Hardt v. Reliance Standard Life Ins. Co.*, 560 U.S. 242, 245 (2010)); *see also Hensley v. Eckerhart*, 461 U.S. 424, 433 (1983) ("A typical formulation is that plaintiffs may be considered prevailing parties for attorney's fees purposes if they succeed on any significant issue in litigation which achieves some of the benefit the parties sought in bringing suit.") (citation modified).

[18] *Gordon v. U.S. Steel Corp.*, 724 F.2d 106, 109 (10th Cir. 1983).

[19] *Cardoza*, 708 F.3d as 1207.

[20] *Allison v. Bank One-Denv.*, 289 F.3d 1223, 1243 (10th Cir. 2002) (citations omitted).

[21] *Id.* at 1244 (quoting *Ford v. Uniroyal Pension Plan*, 154 F.3d 613, 618 (6th Cir. 1998)).

## ANALYSIS

### I. Attorneys' Fees and Costs

Plaintiffs argue they are entitled to an award of attorneys' fees and costs under the five factors established by the Tenth Circuit. The court considers each factor in turn.

#### *A. Factor 1: Culpability or Bad Faith*

Plaintiffs do not argue United acted in bad faith, but contend it is culpable for "abusing its discretion by denying C.L.'s claims in a manner that fell short of ERISA's claims procedure regulations."[22] Plaintiffs point to the fact that they "prevailed on the merits of their case."[23] United argues it is not culpable because, in its Order, this court stated it could not "conclusively say Plaintiffs are clearly entitled to benefits, nor can it determine they are clearly not."[24] It also contends that initially failing to "sufficiently comply with ERISA's procedures . . . does not equate to culpability."[25]

The court finds the first factor weighs in Plaintiffs' favor. "District courts routinely hold that a determination that an insurer has arbitrarily and capriciously rejected a claim, paired with a remand, is enough to warrant an award of attorney's fees."[26] Relying on the District of Colorado's *Van Steen v. Life Insurance Company of North America* decision,[27] United argues the court should not deem it culpable even though it concluded the denial of benefits was

---

[22] *Motion* at 4.

[23] *Id.*

[24] *Opposition* at 8 (quoting *Order* at 58).

[25] *Id.* (citing *Van Steen v. Life Ins. Co. of N. Am.*, No. 15-cv-00137-WYD-MJW, 2016 WL 10859437, at *1 (D. Colo. Oct. 5, 2016), *aff'd* 878 F.3d 994 (10th Cir. 2018)).

[26] *Theo M. v. Beacon Health Options, Inc.*, No. 2:19-cv-00364-JNP-DBP, 2023 WL 4826771, at *3 (D. Utah July 27, 2023) (collecting cases).

[27] No. 15-cv-00137-WYD-MJW, 2016 WL 10859437 (D. Colo. Oct. 5, 2016).

arbitrary and capricious.[28] But *Van Steen* is unhelpful here. In that non-binding case, the court determined the insurer acted arbitrarily and capriciously because the record lacked substantial evidence to support the denial of benefits on the merits.[29] Here, the court concluded United's denial was arbitrary and capricious because it failed to comply with procedures it was required to follow under ERISA. Namely, the court found United failed to address the opinions of C.L.'s caregivers and adequately explain the rationale for its decision.[30] Thus, United is responsible for failing to fulfill its obligations which triggered this action.[31] This factor weighs in Plaintiffs' favor.

*B. Factor 2: Ability to Satisfy an Award of Fees*

The second factor this court is instructed to consider is United's "ability to satisfy an award of fees."[32] In their Motion, Plaintiffs state they do not anticipate Defendant will contend it is unable to satisfy an award of attorneys' fees and costs.[33] United does not contend it is unable to pay, but argues this factor "weigh[s] heavily against an award of fees"[34] because Plaintiffs have presented no evidence it can satisfy an award.[35] United also argues "mere ability to pay cannot justify fees where, as here, other factors weigh against an award."[36]

---

[28] *Opposition* at 8.

[29] *Van Steen*, 2016 WL 10859437, at *1.

[30] *See Order* at 58.

[31] *See B.C. v. United Healthcare Ins. Co.*, No. 2:21-cv-00032-DBB, 2026 WL 2030872, at *5 (D. Utah July 14, 2026) (finding the insurer culpable when it "acted in a way that was wrong or irresponsible," and "failed to engage in a meaningful dialogue as required by ERISA").

[32] *Cardoza*,708 F.3d at 1207.

[33] *Motion* at 5.

[34] *See Opposition* at 3–4.

[35] *Id.* at 5.

[36] *Id.*

The court is not persuaded. Although the court does not assign any weight to this factor, United's ability to pay "is not seriously in question."[37] Additionally, unlike the authorities United relies on,[38] the other factors weigh in favor of an award in this case as explained below.

*C. Factor 3: Deterrence*

The third factor this court considers is "whether an award of fees would deter others from acting under similar circumstance."[39] Plaintiffs argue an award of fees will deter "future abuses of discretion" because "[a]warding fees will send a strong message to both United and other insurers that when they act arbitrarily and capriciously when denying mental health claims, they will have to pay not just benefits but attorney fees."[40] The court agrees. As another court in this District has noted, "similar cases involving denied claims for [residential mental health] treatment in Utah constantly come before this court," and "the insurance industry appears to need a strong push to engage in meaningful dialogue with future claimants"

---

[37] *James C. v. Aetna Health & Life Ins. Co.*, 499 F. Supp. 3d 1105, 1124–25 (D. Utah 2020); *see also James F. ex rel. C.F. v. CIGNA Behav. Health, Inc.*, No. 1:09CV70 DAK, 2011 WL 2441900, at *2 (D. Utah June 15, 2011) ("With regard to the second factor, Defendant CIGNA Behavioral Health is a division of one of the major insurers in the country and it is certainly in a position to pay any award of attorney fees this Court assesses."); *Foust v. Lincoln Nat'l Life Ins. Co.*, No. 2:17-cv-01208-TC, 2019 WL 6223822, at *1 (D. Utah Nov. 21, 2019) ("[W]hile Lincoln faults [the plaintiff] for not providing evidence of [the plaintiff's] ability to pay fees, [the plaintiff] also provides no evidence showing that it could not pay fees. So at best, this factor is neutral.").

[38] *See Opposition* at 5 (citing *Van Steen*, 2016 WL 10859437, and then citing *L.E. v. Deseret Mut. Benefit Adm'rs*, 2023 WL 4083381, at *13 (D. Utah June 20, 2023); *Van Steen*, 2016 WL 10859437at *1 (finding the insurer had the ability to pay an award of attorney fees, but concluding the other factors weighed against an award of fees); *L.E.*, 2023 WL 4083381, at *13 (denying the plaintiff's motion for attorney fees because the plaintiff did "not achieve[] much success on the merits," and the record did not show the insurer's "actions were taken in bad faith or that it otherwise acted culpably").

[39] *Cardoza*, 708 F.3d at 1207.

[40] *Motion* at 5. United contends Plaintiffs "offer no argument[] that this case will have a deterrent effect on other third party administrators of benefit plans in their individualized benefit decisions." *Opposition* at 10. But Plaintiffs do make such an argument, and United fails to address it. *See Motion* at 5; *Opposition*.

for such treatment.[41] Accordingly, the court finds this factor also weighs in Plaintiffs' favor.

*D. Factor 4: Benefit to Participants and Resolving Legal Questions*

The fourth factor the Tenth Circuit has identified is "whether the party requesting fees sought to benefit all plan participants and beneficiaries of an ERISA plan or to resolve a significant legal question regarding ERISA."[42] It is undisputed that this case does not concern any significant legal question regarding ERISA.[43] Plaintiffs concede their claim was not brought on behalf of any plan participants and beneficiaries other than themselves, but contend an award of fees may nevertheless have wide-sweeping benefits by increasing the likelihood of receiving a "full and fair dialogue with United" and avoiding litigation and re-adjudication of their claims.[44] Defendant argues, "[t]his case does not have impact beyond Plaintiffs' individual claim."[45]

This factor does not weigh in Plaintiffs' favor. While it is possible an award of attorneys' fees may afford some remote benefit to other plan participants and beneficiaries, any benefit is speculative and lies in deterrence. However, this conclusion does not foreclose an award of attorneys' fees because "no single factor is determinative in guiding the court's discretion of whether to award fees."[46]

[41] *Theo M.*, 2023 WL 4826771, at *4.

[42] *Cardoza*, 708 F.3d at 1207.

[43] *See generally Motion*; *Opposition*.

[44] *Motion* at 5.

[45] *Opposition* at 10.

[46] *Theo M.*, 2023 WL 4826771, at *5 (citation modified).

*E. Factor 5: Relative Merits of the Parties' Positions*

Under the final factor, the court considers "the relative merits of the parties' positions."[47] This factor "relates closely to the first factor" of culpability.[48] As Plaintiffs note, they achieved some success on the merits because the court remanded to United, who ultimately reversed its prior decision and awarded benefits.[49] United contends Plaintiffs did not demonstrate to this court they were entitled to benefits and when the court concluded the MHPAEA claim was moot, "this meant that Plaintiffs did not prevail on one of its two claims."[50]

This factor weighs in favor of Plaintiffs. The court determined Plaintiffs' claim that Defendant violated ERISA was meritorious.[51] The court did not consider the merits of the MHPAEA.[52] But a fee claimant need only have "achieved 'some degree of success on the merits.'"[53] Here, Plaintiff succeeded on the ERISA claim and the court did not grant summary judgment to Defendant on either claim.[54]

Four of the five factors weigh in Plaintiffs' favor. On balance, the court concludes it is appropriate to award Plaintiffs attorneys' fees and costs.

---

[47] *Cardoza*, 708 F.3d at 1207.

[48] *B.C.*, 2026 WL 2030872, at *6.

[49] *Motion* at 5.

[50] *Opposition* at 9; *see also id.* at 8–10.

[51] *Order* at 61.

[52] *See id.* at 58–59.

[53] *Cardoza*, 708 F.3d at 1207 (quoting *Hardt*, 560 U.S. at 245).

[54] *See generally Order*.

**II. Reasonableness of the Attorneys' Fees and Costs**

In awarding attorneys' fees and costs, it is incumbent on the court to determine the amount to award.[55] To determine the amount of an award, courts employ the lodestar method wherein the fees awarded equal "the number of hours reasonably expended on the litigation multiplied by a reasonable hourly rate."[56] There is a strong presumption the lodestar calculation represents a reasonable fee award and provides a useful starting point from which the court determines its final fee award.[57]

A party seeking an award of attorneys' fees must submit "meticulous, contemporaneous time records that reveal, for each lawyer for whom fees are sought, all hours for which compensation is requested and how those hours were allotted to specific tasks."[58] "Where the documentation of hours is inadequate, the district court may reduce the award accordingly."[59] The court is also instructed to exclude hours that were not "reasonably expended," for example "hours that are excessive, redundant, or otherwise unnecessary."[60] A reasonable hourly rate is based on the "prevailing [rate] in the community for similar services by lawyers of reasonably comparable skill, experience and reputation."[61] Fees are not available for clerical tasks.[62]

---

[55] *See Perdue v. Kenny A. ex rel. Winn*, 559 U.S. 542, 550 (2010).

[56] *Hensley v. Eckerhart*, 461 U.S. 424, 433 (1983); *Perdue*, 559 U.S. at 552–53.

[57] *Perdue*, 559 U.S. at 552–53.

[58] *Case*, 157 F.3d at 1250; *see also Hensley*, 461 U.S. at 433 ("The party seeking an award of fees should submit evidence supporting the hours worked and rates claimed.").

[59] *Hensley*, 461 U.S. at 433.

[60] *Id.* at 434.

[61] *Blum v. Stenson*, 465 U.S. 886, 895 n.11 (1984); *see also Case*, 157 F.3d at 1256.

[62] *See Erickson v. City of Topeka, Kan.*, 239 F. Supp. 2d 1202, 1208 (D. Kan. 2002) (stating fees are not allowed for "tasks which would otherwise have been performed by a secretary or other clerical worker"); *Nimmo v. Comm'r of Soc. Sec. Admin.*, No. 2:24-CV-927-DAK, 2025 WL 2852012, at *1 (D. Utah Oct. 8, 2025) (excluding

In this case, Plaintiffs are represented by Brian King and Samuel Hall. When Plaintiffs initiated this case, King's hourly rate was $400.00 and Hall's rate was $250.00.[63] At the time King and Hall concluded their work on this case, their hourly rates were $600.00 and $300.00 respectively. King billed 76.4 hours on the case and seeks an award that represents this time multiplied by his current hourly rate of $650.00 per hour.[64] Hall expended 51.9 hours on this case and seeks compensation at his current rate of $400.00 per hour.[65]

United argues Plaintiffs request an unreasonable fee because Plaintiffs propose inappropriate rates and did not properly delegate tasks.[66] Plaintiffs respond that counsel have discretion in allocating tasks, United does not account for the operation of small firms, and United does not argue the current hourly rates are "unfair."[67] Additionally, Plaintiffs contend this litigation has spanned years, and "federal case law supports basing attorney fee awards in long-running cases in which 'payment of fees will generally not come until the end of the case, if at all by basing the attorney fee award on current rates."[68] As explained below, the court is largely persuaded that Plaintiffs' proposed fee is appropriate but makes two adjustments.

First, the court agrees that in lengthy cases where "payment of fees will generally not come until the end of the case, if at all," it is appropriate for the court to base an award for

---

administrative clerical work from an attorneys' fee award).

[63] *See* Dkt. 104-5, *Time Entries Chart* (reflecting a $600 per hour fee for King's work last performed in October 2025).

[64] Dkt. 99-3, *Declaration of Brian S. King* (*King Declaration*) ¶¶ 13, 18; *id.* at 6–10 (detailing the hours billed).

[65] Dkt. 99-4, *Declaration of Samuel M. Hall* (*Hall Declaration*) ¶¶ 6–7; *id.* at 3 (detailing the hours billed).

[66] *Opposition* at 5–10.

[67] *Reply* at 7–9.

[68] *Id.* at 9 (citation modified).

attorneys' fees on current rates "to reflect its present value."[69] This action was initiated in 2019 and Plaintiffs did not receive compensation for United's error until 2025.[70] United does not argue Plaintiffs' current rates do not reflect the current market rate, but it objects to assigning current rates to work performed in years past when Plaintiffs' rates were lower.[71]

Given the length of time that has passed during the course of this litigation and Supreme Court precedent, an attorney fee award utilizing Plaintiffs' recent billing rates is appropriate. However, the court concludes Plaintiffs' hourly rate should be adjusted to $600.00 for Brian King and $300.00 for Samuel Hall. When this case was initiated, King's hourly rate was $400.00 and Hall's rate was $250.00.[72] King represents his current rate is $650.00, but the billing rate at the time he completed work on this case in 2025 was $600.00.[73] Hall represents his current rate is $400 per hour, and his billing rate when he completed the work on this case was $300.00 per hour.[74] The court concludes it is equitable to adjust King's and Hall's hourly rates to the rates billed when the work on this case concluded.

Additionally, upon reviewing the time sheet, the court finds the proposed award

[69] *Perdue*, 559 U.S. at 556 (citation modified); *see also Missouri v. Jenkins*, 491 U.S. 274, 282 (1989) ("When plaintiffs' entitlement to attorney's fees depends on success, their lawyers are not paid until a favorable decision finally eventuates, which may be years later. . . . In setting fees for prevailing counsel, the courts have regularly recognized the delay factor, either by basing the award on current rates or by adjusting the fee based on historical rates to reflect its present value." (quoting *Pennsylvania v. Del. Valley Citizens' Council*, 483 U.S. 711, 716 (1987)).

[70] *See Complaint*; *Proof of Payment*.

[71] *Opposition* at 6–7.

[72] *See* Dkt. 104-5, *Time Entries Chart* (reflecting a $600 per hour fee for the last work King performed in October 2025).

[73] *See* Dkt. 99-3, *Declaration of Brian S. King* ¶ 13; *id.* at 10; *Time Entries Chart* (reflecting a $600 per hour fee for work last performed in October 2025).

[74] Dkt. 99-4, *Declaration of Samuel M. Hall* ¶ 6; *id.* at 3; *Time Entries Chart* (reflecting a $300 per hour fee for the last work Hall performed in October 2025).

contains two entries that consist of a purely clerical task, namely, calendaring dates.[75] The court thus deducts these fees, totaling $90.00, from the award.[76] The court otherwise finds the time entries and costs for this case to be reasonable. Accordingly, the court awards attorneys' fees in the amount of $61,720.00.[77]

**III. Prejudgment Interest**

The parties do not dispute the equity of awarding prejudgment interest in ERISA cases.[78] However, the parties differ on the interest rate the court should assess. Plaintiffs argue the court should order prejudgment interest at Utah's statutory 10% simple interest rate for breaches of contract,[79] and United maintains the court should impose an average prime rate of 5.48%.[80]

The Tenth Circuit has not adopted a specific method for calculating prejudgment interest. The district court is tasked with determining an amount that is equitable and "compensatory in nature."[81] In this case, the court concludes the statutory 10% simple interest rate for breach of contract is appropriate.

"Courts commonly look to state statutory prejudgment interest provisions as guidelines

---

[75] *Time Entries Chart* at 2–3.

[76] *See Erickson*, 239 F. Supp. 2d at 1208 ("[P]urely clerical or secretarial tasks should not be billed at [an attorney] rate, regardless of who performs them." (quoting *Jenkins*, 491 U.S. at 288)).

[77] This amount consists of 76.4 hours at $600.00 per hour for King, 51.9 hours at $300.00 per hour for Hall, $400.00 in costs, and a $90.00 deduction for clerical tasks.

[78] *See Motion* at 2–3; *Opposition* at 8–10.

[79] *Motion* at 2–3.

[80] *Opposition* at 14.

[81] *Caldwell v. Life Ins. Co. of N. Am.*, 287 F.3d 1276, 1286 (10th Cir. 2002).

for a reasonable rate" in ERISA cases.[82] When insurers fail to award benefits pursuant to the terms an insured contracted for, the insurer breaches the contract. The court sees no reason to complicate matters by assessing a "rate charged by banks to its most credit-worthy customers," as United asks it to do,[83] when Utah has established an equitable rate for breach-of-contract cases.[84] Accordingly, the court concludes a 10% rate applies here and awards prejudgment interest in the amount of $88,516.32.[85]

**CONCLUSION**

For the foregoing reasons, the court GRANTS IN PART Plaintiffs' Motion.[86] Plaintiffs are entitled to a total attorney fee award of $61,720.00. Plaintiffs are further entitled to prejudgment interest at the rate of 10% per annum in the amount of $88,516.32.

SO ORDERED this 14th day of September 2026.

BY THE COURT

Judge Robert J. Shelby
United States District Court

---

[82] *Weber v. GE Grp. Life Assur. Co.*, 541 F.3d 1002, 1016 (10th Cir. 2008); *see, e.g.*, *Charles W. v. Regence BlueCross BlueShield of Or.*, No. 2:17-cv-00824-TC, 2019 WL 6220060, at *2 (D. Utah Nov. 21, 2019) (awarding a 10% prejudgment interest rate in an ERISA case); *B.C.*, 2026 WL 2030872, at *3 (same); *B.D. v. Blue Cross Blue Shield of Ga.*, No. 1:16-cv-00099-DN, 2018 WL 671213, at *13 (D. Utah Jan. 31, 2018) (same); *Lynn R. v. ValueOptions*, No. 2:12-cv-1201 TS, 2014 WL 4232519, at *10 (D. Utah Aug. 26, 2014) (same); *Krum v. Hartford Life & Accident Ins. Co.*, 942 F. Supp. 2d 1171, 1186 (D. Utah 2013) (same); *Bennett v. Aetna Life Ins. Co.*, No. 2:12-CV-139 TS, 2013 WL 4679482, at *10 (D. Utah Aug. 30, 2013) (same).

[83] *Opposition* at 14 (quoting *Fresenius Med. Care Holdings v. Baxter Int'l*, No. C 03-1431 SBA, 2008 WL 928535, at *4 (N.D. Cal. Mar. 21, 2008)).

[84] *See* Utah Code § 15-1-1(2) ("Unless the parties to a lawful written, verbal, or implied contract expressly specify a different rate of interest, the legal rate of interest for . . . a claim for breach of contract is 10% per annum.").

[85] This amount is calculated based on the amount United should have paid Plaintiffs—$102,763.41—and 10% interest per annum from the last day of C.L.'s treatment to the date of payment.

[86] Dkt. 99.